# LEE LITIGATION GROUP, PLLC
30 EAST 39TH STREET, SECOND FLOOR
NEW YORK, NY 10016
TEL: 212-465-1180
FAX: 212-465-1181
INFO@LEELITIGATION.COM

Writer's Direct: (212) 465-1188
cklee@leelitigation.com

**VIA ECF**

December 10, 2018

The Honorable Allyne R. Ross, U.S.D.J
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Hewitt v. Samaritan Daytop Village, Inc., et al.*
Case No.: 18-cv-5020

Dear Judge Ross:

This firm represents the Plaintiff in the above referenced matter. I write in response to Defendants' December 3, 2018 letter requesting a pre-motion conference in anticipation of their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In their letter, Defendants argue that Plaintiff's Complaint fails to properly allege that Defendants were subject to coverage under the FLSA, and that Plaintiff's FLSA minimum wage and overtime claims are deficient as a matter of law. All of Defendants' arguments are entirely without merit.

### Plaintiff Has Properly Alleged That Samaritan Daytop Village, Inc. is an "Enterprise Engaged in Commerce"

The Complaint alleges that Samaritan Daytop Village, Inc. (hereinafter "Samaritan Village") is a domestic not-for-profit corporation that operates programs and residential treatment centers throughout New York City as well as Rockland County and Suffolk County. (Compl. ¶¶ 6, 7) The Complaint states that Samaritan Village provides programs for transitional housing, homelessness, and an array of other services, serving more than 7,000 individuals daily, one of the largest such programs in the nation. (Compl. ¶ 7) Importantly, the Complaint provides that in addition to donations and government grants, Samaritan Village generates substantial revenues, well in excess of $500,000 from service fees charged to its clients. (Compl. ¶ 8).

The Defendants seem to completely overlook this fact in their pre-motion letter. Instead Defendants focus on whether Samaritan Village's residential substance abuse program is sufficient, alone, to establish enterprise coverage (Plaintiff maintains that it is). Defendants' letter demonstrates a fundamental lack of understanding of the regulations with respect to enterprise coverage of not-for-profit organizations. Defendants are correct that the FLSA expressly carves out certain types of non-profits for inclusion in enterprise coverage, namely hospitals, nursing homes, and other residential treatment facilities. 29 U.S.C. § 303(r)(2)(A-C).

However, they completely overlook the fact that enterprise coverage can be established where the entity "engages in commercial activities, and generates more than $500,000 in revenue from those activities. 29 U.S.C. § 203(s)(1). According to the DOL's Wage and Hour Division Fact Sheet #14A ("Non-Profit Organizations and the Fair Labor Standards Act") "[i]ncome from contributions, membership fees, dues (except any part which represents the value of a benefit, other than of token value, received by the payer), and donations, used in the furtherance of charitable activities, are not considered in determining whether an organization has met the dollar threshold required for FLSA enterprise coverage." (See, Exhibit A). The Complaint alleges that Samaritan Village in fact charges fees to its clients for services in which they receive a benefit of more than token value, and that those fees generate revenues well in excess of $500,000 per year. Specifically, Samaritan Village charges fees to recipients of housing assistance. Plaintiff's job was to help match clients with available housing, and therefore directly related to the revenue generating activity.

An opinion letter from the Department of Labor, dated September 29, 2008 further demonstrates this point. (See, Exhibit B) In that letter a non-profit animal shelter provided shelter and veterinary care for homeless animals, as well as adoption services for those animals. The animal hospital generated revenues from donations, as well as fees for pet adoptions and for spay/neutering services. According to the DOL, the fees provided for pet adoption and spaying neutering were provided for a business purpose and in competition with other businesses, and thus can be counted towards annual revenue for enterprise coverage purposes.

<u>Plaintiff Has Alleged Valid Claims for Unpaid Minimum Wages under the FLSA</u>

Plaintiff is correct that under the *Klinghoffer* Rule "An employee who has not worked overtime has no claim under FLSA for hours worked below the 40-hour overtime threshold, unless the average hourly wage falls below the federal minimum wage." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). Here Plaintiff alleges that she was regularly scheduled to work forty hours per week throughout her employment. (Compl. ¶¶ 25, 27). Plaintiff further alleges that in addition to her regular schedule, she was required to work up to three hours per week entirely uncompensated. Because, those uncompensated hours were in excess of forty hours per week, Plaintiff may properly bring claims for unpaid minimum wages under the FLSA.

<u>Plaintiff Has Properly Alleged Violations of the FLSA Overtime Requirements</u>

Defendants claim that the Complaint fails to provide sufficient facts to support a claim for unpaid overtime. The Second Circuit has held that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 88 (2d Cir. 2013) (quoting, *Lundy v. Catholic Health System of Long Island*, 711 F.3d 106, 114 (2d Cir. 2013). Furthermore, "determining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. Therefore, the Second Circuit held that an approximation of overtime hours is not a necessity in all cases. *Id.*

Here the Complaint includes detailed allegations demonstrating that the Plaintiff worked in excess of forty hours per week throughout her employment. First, Plaintiff was regularly scheduled to work five days per week, eight hours per day, for a total of forty hours per week throughout her employment. (Compl. ¶¶ 25, 27) Plaintiff further alleges that she was never able to take an uninterrupted break. (Compl. ¶ 30) Finally, Plaintiff claims that in addition to the forty hours she was regularly scheduled to work, she was also required to work additional hours, off the clock. Specifically, Plaintiff alleges that she was required to work "between thirty minutes to an hour after clocking out," and that "this would occur on average, three days per week." (Compl. ¶ 32). Plaintiff even sets forth what off-the-clock activities she was required to perform, namely that she was called back to her desk to meet with clients. Id.

Defendants seem to argue that a valid FLSA overtime claim must provide factual details regarding specific workweeks, precise hours worked, and the nature of the work performed. That is a gross mischaracterization of the standards set forth by the Second Circuit. Rather, A plaintiff is not required "to keep careful records and plead hours with mathematical precision, but may draw on memory and experience to provide complains with sufficiently developed factual allegations to support the claim that he was denied overtime in violation of the FLSA. *Lopez v. Royal Thai Plus,* 16-cv-4028(NGG)(SJB), 2018 U.S. Dist. LEXIS 20271 (E.D.N.Y. Feb. 6, 2018) (internal quotations omitted). Thus, since Plaintiff has at a minimum set forth a plausible claim for unpaid overtime in at least one work week, she has sufficiently plead a violation of the FLSA's overtime requirements.

For the above reasons, Plaintiff respectfully requests that Defendants' request for leave to file a Motion to Dismiss be denied.

We thank the Court for its kind consideration.


Respectfully submitted,

*/s/ William Brown*
William Brown, Esq.

Encl.
cc: All parties via ECF

EXHIBIT A

# United States Department of Labor
Wage and Hour Division

## Wage and Hour Division (WHD)

**(August 2015)** (PDF)

### Fact Sheet #14A: Non-Profit Organizations and the Fair Labor Standards Act (FLSA)

This fact sheet provides general information about how the FLSA applies to non-profit organizations. The FLSA is the Federal law which sets minimum wage, overtime, recordkeeping, and child labor standards. There are two ways in which an employee can be covered by the law and therefore entitled to its protections: "enterprise coverage" and "individual coverage."

### Enterprise Coverage

The FLSA generally applies to ("covers") employees employed by businesses with annual gross volume of sales made or business done of at least $500,000. Non-profit charitable organizations are not covered enterprises under the FLSA unless they engage in ordinary commercial activities that result in sales made or business done, such as operating a gift shop or providing veterinary services for a fee.

In determining whether or not a non-profit organization is a covered enterprise, the Wage and Hour Division will consider only activities performed for a business purpose. Charitable, religious, educational, or similar activities of organizations operated on a non-profit basis where such activities are not in substantial competition with other businesses do not result in the organizations being considered covered enterprises. For a non-profit organization, enterprise coverage applies only to the activities performed for a business purpose; it does not extend to the organization's charitable activities.

Income from contributions, membership fees, dues (except any part which represents the value of a benefit, other than of token value, received by the payer), and donations (cash or non-cash), used in the furtherance of charitable activities, are not considered in determining whether an organization has met the dollar threshold required for FLSA enterprise coverage. See Fact Sheet 14: Coverage Under the Fair Labor Standards Act (FLSA) for additional information about enterprise coverage.

*For example, a non-profit animal shelter provides free veterinary care, adoption services, and shelter for homeless animals (charitable activities). In addition, the shelter provides veterinary care for a fee to customers (commercial activities). If the revenue generated from the organization's commercial activities is at least $500,000 in a year, the employees engaged in the commercial activities are protected by the FLSA on an enterprise basis. Employees of the organization's charitable activities are not covered on an enterprise basis since those activities do not have a business purpose.*

### Individual Coverage

Employees of employers that are not covered by the FLSA on an enterprise basis may still be entitled to its protections if they are individually engaged in interstate commerce or in the production of goods for interstate commerce, or in any closely-related process or occupation directly essential to such production.

Examples of activities that may result in individual employee coverage include making/receiving interstate telephone calls, shipping materials to another state, and transporting persons or property to another state. The Wage and Hour Division, however, will not assert that an employee who on isolated occasions spends an insubstantial amount of time performing individually covered work is individually covered by the FLSA. See Fact Sheet 14: Coverage Under the Fair Labor Standards Act (FLSA) for additional information about indivudual coverage.

## Volunteers

The FLSA recognizes the generosity and public benefits of volunteering and allows individuals to freely volunteer in many circumstances for charitable and public purposes. Individuals may volunteer time to religious, charitable, civic, humanitarian, or similar non-profit organizations as a public service and not be covered by the FLSA. Individuals generally may not, however, volunteer in commercial activities run by a non-profit organization such as a gift shop. A volunteer generally will not be considered an employee for FLSA purposes if the individual volunteers freely for public service, religious or humanitarian objectives, and without contemplation or receipt of compensation. Typically, such volunteers serve on a part-time basis and do not displace regular employed workers or perform work that would otherwise be performed by regular employees. In addition, paid employees of a non-profit organization cannot volunteer to provide the same type of services to their non-profit organization that they are employed to provide.

## Where to Obtain Additional Information

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

EXHIBIT B

# United States Department of Labor
## Wage and Hour Division

Wage and Hour Division (WHD)

**Opinion Letters - Fair Labor Standards Act**

**FLSA2008-8**

**September 29, 2008**

Dear **Name***:

This is in response to your letter requesting an opinion regarding how certain types of revenue generated by your client affect your client's coverage under the Fair Labor Standards Act (FLSA). Although your client's total revenue is currently less than the $500,000 threshold for enterprise coverage under section 3(s)(1)(A) of the FLSA[1], you wish to know whether your client's services of providing veterinary care, shelter, and adoption services for homeless animals qualify as "eleemosynary" and whether certain categories of revenue and non-cash donations generated by your client should be included when making future determinations of enterprise coverage.

Your client is a private, non-profit, charitable organization providing shelter and medical care (including spaying and neutering) for homeless animals and placing animals in adoptive homes. The organization's charter states that gifts and donations made to the organization may be used only to further the charitable purposes of the organization. Your client's total revenue in one recent year was about $414,000. The sources of the revenue were as follows: (a) cash donations from individual and corporate contributors, (b) fees for pet adoptions and sales of spay/neuter certificates, (c) membership dues, and (d) dividends and interest from securities and investments.

Under sections 6 and 7 of the FLSA, the Act's minimum wage and overtime requirements apply to all nonexempt employees of covered "enterprises"—*enterprise coverage*—and to nonexempt employees individually engaged in interstate commerce—*individual coverage*. Your inquiry is limited to the issue of enterprise coverage. Pursuant to sections 3(r) and (s) of the FLSA, enterprise coverage applies to the following employers:

- Federal, state, or local government agencies;

- Hospitals (establishments primarily engaged in offering medical and surgical services to patients who generally remain in the establishment overnight, several days, or for extended periods);

- Residential care facilities primarily engaged in (i.e., 50% or more of income attributable to) the care of the sick, aged, mentally ill, or developmentally disabled who live on the premises;

- Preschools, elementary and secondary schools (as determined under state law), and colleges; as well as schools for mentally or physically handicapped or gifted children; and

- Enterprises with a business purpose with an annual dollar volume (ADV) of "sales made or business done" of $500,000 or more and at least two employees engaged in commerce or the production of goods for commerce.

*Enterprise coverage*, as defined in section 3(s), applies only to activities performed for a business purpose. It typically does not extend to the eleemosynary, religious, educational, or similar activities of organizations operated on a nonprofit basis where such activities are not in substantial competition with other businesses. *See* 29 C.F.R. § 779.214; *see also* Wage and Hour Opinion Letters May 3, 1994; and December 16, 1968 (copies enclosed). Thus, as we stated in our December 16, 1968 letter:

The eleemosynary activities of a charitable organization such as the Humane Society, if operated on a nonprofit basis, would generally be considered to be outside the act's enterprise coverage. In addition, any other activities in which such organization might engage would not provide a basis for enterprise coverage of the employees employed in them unless the annual gross volume of sales made or business done in such activities is $500,000 or more. . . .

Based on the information provided, it appears that most of your client's services qualify as eleemosynary; in any event, your client would not currently be covered on an enterprise basis, because its total revenue is below $500,000 from all income. Because your client anticipates that its total revenue may in the future exceed the statutory threshold, you ask for our determination as to whether various categories of revenue count toward the $500,000 threshold.

Although the FLSA and its implementing regulations are silent regarding whether the four categories of revenue you describe should be included as "sales made or business done" when calculating ADV for enterprise coverage purposes, it has long been our position that income derived from eleemosynary activity should not be included as sales made or business done. Income from contributions, membership fees, or dues (except any part which represents the value of a benefit, other than of token value, received by the payer), or donations (cash or non-cash) used in the furtherance of eleemosynary activities, does not come within the phrase "sales or business done" in section 3(s). Consequently, your client need not count such income in the calculation of its ADV under section 3(s).

Services provided for a fee to customers, such as for spaying/neutering or for pet adoption, are provided for a business purpose to the general public in competition with other businesses (pet stores, kennels, etc) and thus do not qualify as eleemosynary activities. Also, interest and dividends on investments are "sales made or business done" under section 3(s) which must be included in the ADV calculations. *See* Wage and Hour Opinion Letters January 29, 1999; November 4, 1983; October 16, 1974; December 31, 1969; and May 29, 1968.

Please bear in mind that employees of enterprises not covered under the FLSA may still be *individually covered* in any workweek in which they are engaged in interstate commerce, the production of goods for commerce, or activities closely related and directly essential to the production of goods for commerce. Examples of such interstate commerce activities include making/receiving interstate telephone calls, shipping materials to another state, and transporting persons or property to another state. Note, however, that the WHD has a longstanding enforcement position on individual coverage that is contained in the Field Operations Handbook: "As a practical matter, the Wage and Hour Division does not assert *individual coverage* over an employee who is ordinarily engaged in employment which is not covered but who may on isolated occasions spend an insubstantial amount of time performing [such] individually covered work." Field Operations Handbook § 11a01.

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your request might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.

We trust that this letter is responsive to your inquiry.

Sincerely,


Alexander J. Passantino
Acting Administrator

Enclosures: Wage and Hour Opinion Letters January 29, 1999; May 3, 1994; November 4, 1983; October 16, 1974; December 31, 1969; December 16, 1968; May 29, 1968

* Note: The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. § 552(b)(7).

---

1 Unless otherwise noted, any statutes, regulations, opinion letters, or other interpretive material cited in this letter can be found at www.wagehour.dol.gov.